UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL ORTIZ,  :
         Plaintiff, :
    :
    v. : No. 5:16-cv-06703
    :
CEDAR CREST COLLEGE, :
         Defendants. :

**O P I N I O N**
**Defendant's Motion for Summary Judgment, ECF No. 31 – Granted**

**Joseph F. Leeson, Jr.**          **December 18, 2017**
**United States District Judge**

## I. INTRODUCTION

Plaintiff Michael Ortiz initiated this action on December 30, 2016, alleging that he was terminated by his former employer, Defendant Cedar Crest College, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Ortiz alleges that he was unlawfully terminated based solely on his age and national origin. Currently pending is the College's Motion for Summary Judgment, which asserts that Ortiz has failed to establish a prima facie case of discrimination and that, regardless, the College had legitimate, non-pretextual reasons for his termination. Because Ortiz has not offered any evidence to establish a prima facie case of discrimination or to rebut the College's showing of legitimate non-discriminatory reasons, the motion is granted.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. UNDISPUTED FACTS

In support of its Motion for Summary Judgment, the College filed a Statement of Undisputed Material Facts. *See* Def.'s Stmt. Mat. Facts, ECF No. 33. Each fact is properly

2
121517

supported by a citation to the record. *See id.* Ortiz, however, did not file a statement of material facts in opposition to the Motion for Summary Judgment, as required by this Court's scheduling Order dated June 2, 2017, and by its Policies and Procedures, both of which outline the required content for briefs and responses to dispositive motions. *See* Policies and Procedures Section II(F), http://www.paed.uscourts.gov/documents/procedures/leepol.pdf; Order 2-3, ECF No. 14. The Order dated June 2, 2017, warned the parties that "[a]ll facts set forth in the moving party's statement of material facts may be taken by the Court as admitted unless controverted by the opposing party." Order 3. Similarly, this Court's Policies and Procedures advise that "[a]ll facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted." Policies and Procedures Section II(F)(9). Thus, consistent with Rule 56(e)(2) of the Federal Rules of Civil Procedure, the College's statement of material facts are deemed undisputed for purposes of this Opinion, subject to the qualification discussed below. *See* Fed. R. Civ. P. 56(e)(2) (providing that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"); *Robinson v. N.J. Mercer County Vicinage - Family Div.*, 562 F. App'x 145, 147, 149 (3d Cir. 2014) (holding that the district court did not err in concluding that the defendants' material facts were undisputed where the plaintiff failed to oppose the defendants' statement of material facts); *Schuenemann v. United States*, No. 05-2565, 2006 U.S. App. LEXIS 4350, at *15 n.7 (3d Cir. 2006) (holding that the district court properly deemed the defendants' statement of facts as undisputed for purposes of deciding the motion for summary judgment where the plaintiff failed to respond to each numbered paragraph of the defendants' statements of fact). Although not required, this Court has considered Ortiz's unsworn declaration, which was attached to the response to the summary judgment motions, and to the extent that any of the

averments made therein contradict any statement of material fact by the College, the statement will not be deemed unopposed.

## IV.    ANALYSIS

Disparate treatment claims brought under Title VII and the ADEA are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007). "Under the McDonnell Douglas paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Id.* "It is important to note that although the burden of production may shift during the McDonnell Douglas inquiry, the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Id.*

**A.    Events that occurred outside the time period for Ortiz to file an EEOC complaint are admissible to support his timely claim, which is based solely on his alleged unlawful termination.**

Because a plaintiff must file an EEOC complaint before bringing an action in federal court for employment discrimination, "events that occurred more than 300 days prior to the filing of an EEOC Charge are [generally] time-barred." *Elmarakaby v. Wyeth Pharm., Inc.*, No. 09-1784, 2015 U.S. Dist. LEXIS 41300, at *13-14 (E.D. Pa. Mar. 30, 2015). Hostile work environment claims are an exception to this general rule because "[t]heir very nature involves repeated conduct." *AMTRAK*, 536 U.S. at 115. Thus, "[p]rovided that an act contributing to the

claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. Another exception to the general rule, which is not limited to hostile work environment claims, is the continuing-violation doctrine. *See McCann v. Astrue*, 293 F. App'x 848, 850-51 (3d Cir. 2008) (holding that the continuing violations doctrine "applies when the alleged discriminatory acts are not individually actionable, but when aggregated may make out a hostile work environment claim"). This doctrine "provides that when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (internal quotations omitted). The "doctrine is understandably narrow." *Id.*

Ortiz does not argue that the continuing violation doctrine applies to his claim. Further, Ortiz is not pursuing a hostile work environment claim,[1] as he alleges only that his unlawful

---

[1] Even if Ortiz was pursuing a hostile work environment claim, he has failed to present sufficient evidence to support such a claim.

To establish a hostile work environment claim, the plaintiff "must show that (1) he suffered intentional discrimination because of his national origin [or age]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *Tate v. Main Line Hosps., Inc.*, No. 03-6081, 2005 U.S. Dist. LEXIS 1814, at *60-61 (E.D. Pa. Feb. 8, 2005). In deciding whether an environment is "hostile," the court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). "'[O]ffhanded comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Ortiz alleges that one of his supervisors "made repeated, hostile comments," but has not established that the discrimination was severe or pervasive. *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) (finding that "although there was some evidence in this case of inappropriate racist comments, graffiti, and flyers, this evidence was insufficient without more to establish a hostile work environment"). He has also failed to produce evidence to suggest that he

termination caused harm. Am. Compl. ¶ 25, ECF No. 7; Resp. Opp. Defs.'s Mot. Summ. Jdgmt. 1-3 and Ortiz Aff., ECF No. 36. Therefore, no discrete acts that occurred prior to November 20, 2015, *see* EEOC complaint, Ex. N, ECF No. 33-2, are actionable. Nevertheless, "the statute [does not] bar an employee from using the prior acts as background evidence in support of a timely claim." *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002); *Elmarakaby*, 2015 U.S. Dist. LEXIS 41300, at *13-16 (concluding that the prior discrete discriminatory acts alleged by the plaintiff colored the events surrounding his termination and could be used as background evidence to support his timely Title VII claims); *Davis v. Gen. Accident Ins. Co. of Am.*, No. 98-4736, 2000 U.S. Dist. LEXIS 17356, at *8 (E.D. Pa. Dec. 1, 2000) (determining that even without the continuing violations theory, the discriminatory acts were admissible to support the plaintiff's timely allegations of adverse employment actions).

**B.     Summary judgment is granted in favor of the College on Ortiz's age discrimination claim.**

*1.     Ortiz has failed to show a prima facie case of age discrimination.*

"To state a claim for age discrimination . . ., plaintiff must allege that (1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement[2] was sufficiently younger to permit a reasonable inference of age discrimination." *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006). The Third Circuit Court of Appeals has "defined 'an adverse employment action' under Title VII as an

---

was detrimentally affected or that a reasonable person in his same protected class would have been detrimentally affected.

[2]     Alternatively, a plaintiff may establish a prima facie case of age discrimination by showing that younger employees were treated more favorably. *Steinagel v. Valley Oral Surgery*, No. 12-cv-05645, 2013 U.S. Dist. LEXIS 141146, at *19-20 (E.D. Pa. Sept. 30, 2013). Ortiz makes no such allegations in this case, nor is there any evidence that younger employees were treated more favorably, to permit a reasonable inference of age discrimination.

action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

Ortiz, who was fifty-one years old when he was terminated, undisputedly suffered an adverse action. Further, aside from the problems associated with his alleged reasons for termination regarding the server crash, the College does not dispute that Ortiz was qualified for the position, which he held for more than ten years. Accordingly, the Court will focus on whether Ortiz can demonstrate that his replacement was sufficiently younger.

Ortiz states in his affidavit that the "first person hired in IT" after his termination, Frank Mroz, was forty-four years old. Ortiz Aff. ¶ 69, ECF No. 36-1. Ortiz does not assert, however, when[3] Mr. Mroz was hired, what duties he was assigned, or that he replaced Ortiz as the College's Network Administrator, nor does Ortiz provide any citation to the record to support his statement. Without this information, Ortiz has not established that he was "replaced" by someone sufficiently younger. *See Hollander v. Am. Cyanamid Co.*, 999 F. Supp. 252, 260 (D. Conn. 1998) (granting summary judgment on the plaintiff's age discrimination claim because the plaintiff failed to offer any evidence that would show the "so-called 'replacements' actually preform[ed] the same functions and ha[d] the same responsibilities"), *aff'd* 172 F.3d 192, 204 (2d Cir. 1999).

Further, Ortiz has not shown that Mr. Mroz was "sufficiently younger" to permit a reasonable inference of age discrimination. "There is no magical formula to measure a particular age gap and determine if it is sufficiently wide to give rise to an inference of discrimination." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 699 (3d Cir. 1995) (explaining that case law assists

---

[3] Ortiz's affidavit was prepared more than a year after he was terminated.

7
121517

the inquiry). In *Andy*, the Third Circuit Court of Appeals affirmed the district court's conclusion that the plaintiff, who was 52 years old when he was terminated, had not made out a prima facie case of age discrimination where his replacement was seven years younger. *Andy v. UPS*, 111 F. App'x 670, 670-71 (3d Cir. 2004); *see also Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n.9 (3d Cir. 2000) (finding that the respective ages of 49 and 54 did differ materially to permit an inference of discrimination). As in *Andy*, this Court concludes that the seven-year age gap is not sufficiently wide to infer age discrimination.

Consequently, Ortiz has not made out a prima facie case of age discrimination. Although this conclusion is sufficient to warrant summary judgment in the College's favor on this claim, the Court will nevertheless continue the McDonnell Douglas inquiry.

### 2. *The College had a non-discriminatory reason to terminate Ortiz.*

"Once a plaintiff establishes a prima facie case the law creates a presumption[4] of unlawful discrimination, and the defendant employer must articulate a legitimate nondiscriminatory explanation for the employer's adverse employment action." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995) (internal quotations omitted). "If the employer meets this burden of production, then the presumption of discriminatory intent created by the employee's prima facie case is rebutted and the presumption simply 'drops out of the picture.'" *Seman v. Coplay Cement Co.*, 26 F.3d 428, 432 (3d Cir. 1994) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 511.

Assuming that Ortiz had made a prima facie case of discrimination, the presumption would nevertheless be rebutted because the College has provided evidence of legitimate

---

[4] "[A] presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (internal quotations omitted).

nondiscriminatory reasons for Ortiz's termination. Specifically, in June and again in July, a drive on the College's servers failed. The second failure caused the entire server to crash and because backups had not been performed since the first failure, data could not be restored and cost the College thousands of dollars. As Network Administrator, Ortiz's job was to monitor and maintain production servers and perform nightly backups of servers, "ensuring the ability to restore in the event of a system failure." Job Description, Ex. C, ECF No. 33-1. Elizabeth Meade, the President of the College, testified that she fired Ortiz for two reasons: (1) failing to perform the backups that were listed in his job duties, and (2) failing to maintain the servers that were part of the data loss. Meade Dep. 24:12-18, Ex. E, ECF No. 33-1. Accordingly, the College has articulated legitimate nondiscriminatory reasons for its decision to terminate Ortiz approximately one week after the server crash.

### 3. *Ortiz cannot show pretext.*

To avoid summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (holding that a plaintiff "may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action"). "[T]he plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that

is, the proffered reason is a pretext)." *Id.* (internal citations omitted). "It is not sufficient to show that the employer's decision was wrong, mistaken, imprudent or incompetently made." *Rabinowitz*, 252 F. Appx. at 527. "In carrying his/her ultimate burden of persuasion in a pretext case, the employee must establish a basis from which the trier of fact can conclude by a preponderance of the evidence 'that there is a 'but-for' causal connection between the plaintiff's age and/or national origin and the employer's adverse [employment decision] - i.e., that age and/or national origin 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome of that process.'" *Rocco v. Am. Longwall Corp.*, 965 F. Supp. 709, 713 (W.D. Pa. 1997) (quoting *Miller v. CIGNA Corp.*, 47 F.3d 586, 595-96 (3d Cir. 1995)). The plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal citations and quotations omitted). "While this standard places a difficult burden on the plaintiff, 'it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" *Id.* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

Ortiz blames the College for the server crash, asserting that he did not receive proper training and was not permitted to purchase and install the necessary software that could have prevented the crash. However, he has not shown that his termination was pretextual. *See Keller v. Orix Credit All.*, 130 F.3d 1101, 1111 (3d Cir. 1997) (explaining that to survive summary judgment, the plaintiff "must point to evidence that proves age discrimination in the same way that critical facts are generally proved -- based solely on the natural probative force of the

evidence). There is no evidence that the College denied Ortiz training or software based on any discriminatory reasons. *See* Ortiz Aff. ¶ 26 (Ortiz attests that a coworker was also denied funding for the devices to monitor the servers.). Instead, Ortiz relies on the discriminatory comments made to him by his supervisor, Kathy Cunningham, as evidence of pretext. But, there is no evidence that Ms. Cunningham had any involvement with the decision to terminate Ortiz and, in fact, she was no longer employed by the College when he was terminated. *See* Meade Dep. 40:17-21; *Ezold*, 983 F.2d at 545 (finding that remarks made by a non-decisionmaker, while inappropriate, were not sufficient to show pretext of the firm's promotion decision). Ortiz also contributes one age-related discriminatory comment to President Meade, who alone made the decision to terminate him.[5] Ortiz contends that he was told by Ms. Cunningham that President Meade told her that Ortiz was "old and antiquated and need[s] to go. Ortiz Aff. ¶ 13. However, this alleged comment was made approximately ten months before Ortiz was terminated. *See Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 558-59 (3d Cir. 2009) (concluding that stray remarks made seven months before the plaintiff's termination were not evidence of pretext). Ortiz has therefore failed to show that President Meade's reasons for his termination were pretextual.

Summary judgment is granted in favor of the College on Ortiz's age discrimination claims.

**C.    Summary judgment is granted in favor of the College on Ortiz's national origin discrimination claim because Ortiz has failed to show a prima facie case, or that the College's legitimate nondiscriminatory reasons for terminating him were pretextual.**

A prima facie case of employment discrimination requires the plaintiff to show that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an

---

[5] *See* Meade Dep. 40:17-21.

adverse employment action; and (4) under circumstances that raise an inference of discriminatory action. *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003). Ortiz, who is of Hispanic origin, can satisfy the first three elements, but he has not shown that his termination raises an inference of discrimination based on his national origin.

"The central focus in a discrimination case is "whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15. (1977)). Ortiz offers no evidence that he was treated any differently based on his national origin. Moreover, the only alleged discriminatory acts or comments pertaining to his national origin were allegedly made by Ms. Cunningham. But, as discussed in the section above, Ms. Cunningham had no involvement with the decision to terminate Ortiz and was no longer employed by the College at the time of his termination. Accordingly, he offers no evidence that would raise an inference of discrimination in President's Meade's decision to terminate his employment. *See Peake v. Pa. State Police*, 644 F. App'x 148, 151 (3d Cir. 2016) (affirming the district court's decision that the plaintiff had not made out his prima facie case for race discrimination because he could not show a causal link between his membership in a protected class and the adverse employment action); *Sarullo*, 352 F.3d at 797-98 (agreeing with the district court that the plaintiff failed to make a prima facie case of race discrimination where he offered little more than his own affidavit that some of his coworkers and supervisors called him derogatory nicknames referencing his Native American heritage); *Smith v. The Thresholds*, No. 97 C 7234, 1999 U.S. Dist. LEXIS 9064, at *27-28 (N.D. Ill. May 25, 1999) (dismissing race and national origin claims because the employee failed to show that his supervisor's repeated use of racial slang was related to the employment decision).

Summary judgment is therefore warranted in the College's favor because Ortiz has not made out a prima facie case of discrimination based on his race or national origin.

Moreover, for the reasons set forth above, even if Ortiz had shown a prima facie case of discrimination in this context, the College has offered legitimate nondiscriminatory reasons for his termination, which Ortiz cannot show are pretextual. The evidence is even weaker in his national origin claim because there is no suggestion that President Meade ever made a discriminatory comment regarding his national origin. *See Hurd v. N.Y.C. Health & Hosps. Corp.*, No. 07-1250-cv, 2008 U.S. App. LEXIS 24727, at *3-4 (2d Cir. 2008) (concluding that the plaintiff failed to make a prima facie case of discrimination and that even if he had, his reliance "on conclusory statements regarding one supervisor's favoritism towards Hispanics" did not rebut the employers' showing of non-discriminatory reasons for their decision).

Summary judgment is therefore granted in favor of the College on all remaining claims.

## V. CONCLUSION

Despite the fact that the response in opposition to the summary judgment motion does not comply with this Court's Order or its Policies and Procedures, this Court has considered the arguments raised therein and the affidavit attached thereto. The College's request to strike Ortiz's response from the record is therefore denied.

After review, this Court finds that based on the undisputed facts, the College has failed to establish a prima facie case of discrimination. Moreover, even if Ortiz had made a prima facie case, the College has offered legitimate non-discriminatory reasons for its decision to terminate Ortiz and he and not shown that these reasons are pretextual. Consequently, the Motion for Summary Judgment is granted. Judgment is entered in favor of Defendant and against Plaintiff on all claims.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge